# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEON WATTS, individually and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br>v.<br><br>BEIERSDORF INC.,<br><br>                        Defendant. | Case No. 1:24-cv-00527-HG<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

      Plaintiff Deon Watts ("Plaintiff") brings this First Amended Class Action Complaint on behalf of herself and all others similarly situated against Defendant Beiersdorf Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which is based on her personal knowledge.

## NATURE OF THE ACTION

      1.     This is a class action on behalf of purchasers of Defendant's Aquaphor® branded Lip Repair products (the "Product" or "Products") that claim to contain "no preservatives." This representation is false and/or misleading because the Products contain sodium ascorbyl phosphate—a chemical preservative commonly used in skin care products.

      2.     Defendant's "no preservatives" representation is featured on the Products' labeling in order to induce health-conscious consumers to purchase skin care products that are free from preservatives. Defendant markets its Products in a systematically misleading manner by misrepresenting that the Products do not contain preservatives.

      3.     Defendant has profited unjustly as a result of its deceptive conduct. Plaintiff therefore asserts claims on behalf of herself and similarly situated purchasers for violation of New York General Business Law §§ 349 and 350, breach of express warranty, and unjust enrichment.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

5. This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

7. Plaintiff Deon Watts is a citizen of New York who resides in Brooklyn, New York. Ms. Watts has purchased the Products on numerous occasions over the past year. Most recently, in or around November 2023, Plaintiff purchased Aquaphor Lip Repair at a Target store located in Brooklyn, New York. In purchasing the Product, Plaintiff relied on Defendant's false, misleading, and deceptive marketing that the Product contained "no preservatives." Plaintiff understood that "no preservatives" meant the Product did not contain any preservatives. However, the Product she purchased contained the preservative sodium ascorbyl phosphate. Had Plaintiff known the "no preservatives" representation was false and misleading, she would not have purchased the Product, or, at the very least, would have only been willing to purchase the Product at a lesser price.

8. Defendant Beiersdorf Inc. is a corporation organized under the laws of Delaware with its principal place of business located in Stamford, Connecticut. Defendant formulates,

advertises, manufactures, and/or sells the Products throughout New York and the United States.

## GENERAL ALLEGATIONS

9. **Defendant misrepresents that the Products contain "no preservatives."** Defendant advertises on the label of the Products that they contain "no preservatives." Thus, reasonable consumers are led to believe the Products are free from preservatives. However, the Products contain sodium ascorbyl phosphate, which is a chemical preservative. Examples of the Products' labeling, along with their ingredient list, are depicted below:





# Aquaphor®
## LIP REPAIR

**Aquaphor® Lip Repair** immediately relieves dryness and soothes chapped, cracked lips. It provides effective, long-lasting moisture, so lips look and feel healthier. Formulated with a special combination of nourishing vitamins (C, E, provitamin B5), moisturizers, shea butter, and soothing chamomile essence, Aquaphor leaves lips feeling soft and comfortable.

**Aquaphor is the #1 dermatologist recommended lip care brand.**

- Fragrance free
- **No preservatives or dyes**
- Appropriate for sensitive lips

**To use:** Apply to lips as needed.
**Caution: Keep out of reach of children.** Stop use if irritation develops.

**Ingredients:** Octyldodecanol, C18-38 Alkyl Hydroxystearoyl Stearate, Ricinus Communis (Castor) Seed Oil, Caprylic/Capric Triglyceride, Glycerin, Panthenol, Bis-Diglyceryl Polyacyladipate-2, Water, Polyglyceryl-3 Diisostearate, Butyrospermum Parkii (Shea) Butter, Hydrogenated Castor Oil, Tocopherol, Tocopheryl Acetate, **Sodium Ascorbyl Phosphate**, Bisabolol, Beeswax, C20-40 Alkyl Stearate, Magnesium Stearate, Magnesium Sulfate.

Questions? 1-800-227-4703
www.AquaphorUS.com

**Beiersdorf**

Made in Mexico/Distributed by:
Beiersdorf Inc., Stamford, CT 06901
®=reg. TM. of
Beiersdorf AG, Germany

NART # 63875



0 72140 00638 9

10. **Sodium ascorbyl phosphate is a preservative.** Sodium ascorbyl phosphate is preservative commonly added to as an antioxidant in cosmetics and skin care products. Sodium ascorbyl phosphate is a salt of ascorbic acid, meaning it combines ascorbic acid-- another chemical preservative—with a phosphate and a salt. Ascorbic Acid and its salts, such as the sodium ascorbyl phosphate contained in the Product at issue, are used in the formulation of cosmetics and personal care products as antioxidants to slow deterioration caused by exposure to the air and also to control the pH of the finished product. In this way, they act as preservatives. Sodium ascorbyl phosphate is frequently used in cosmetic and skin care products because it is a gentler on the skin and better suited for use in these products than pure ascorbic acid. Because it still retains the same antioxidant properties as ascorbic acid at a lower strength, it is preferred for use in skin products.

11. **Sodium ascorbyl phosphate has antioxidant and antimicrobial properties.** Sodium ascorbyl phosphate is a common cosmetic additive with antioxidant and microbial properties, making it a preservative by definition. Sodium ascorbyl phosphate functions as an antioxidant in cosmetic products and is used at concentrations ranging from 0.01% to 3%.[1] Like other Vitamin C derivatives, sodium ascorbyl phosphate functions as an antioxidant by protecting double bonds and scavenging oxygen.[2] The antioxidant effect of ascorbyl phosphates in protecting

---

[1] Elmore AR. *Final report of the safety assessment of L-Ascorbic Acid, Calcium Ascorbate, Magnesium Ascorbate, Magnesium Ascorbyl Phosphate, Sodium Ascorbate, and Sodium Ascorbyl Phosphate as used in cosmetics*. INT J TOXICOL. 2005;24 Suppl 2:51-111. doi: 10.1080/10915810590953851. PMID: 16154915. https://pubmed.ncbi.nlm.nih.gov/16154915/

[2] https://enclaire.in/article/where-does-sodium-ascorbyl-phosphate-rank-as-vitamin-c-derivative;

P. Jurkovič, M. Šentjurc, J. Kristl, S. Pečar, M. Gašperlin, Comparison of two ascorbic acid derivatives effectiveness for scavenging ultraviolet-induced free radicals in the skin, Journal of Drug Delivery Science and Technology, Volume 14, Issue 3, 2004, Pages 229-233, ISSN 1773-2247, https://doi.org/10.1016/S1773-2247(04)50105-3. (https://www.sciencedirect.com/science/article/pii/S1773224704501053)

the skin against UV damage has also been demonstrated in a number of studies. Sodium ascorbyl phosphate also has antimicrobial properties that inhibit the growth of bacterial strains.[3] Its low pH prevents microbial growth, thereby preventing spoilage and preserving freshness and color.

12. **The subjective intent of use is immaterial.** Sodium ascorbyl phosphate functions as a preservative in the Products, and this is true regardless of Defendant's subjective purpose or intent for adding them to the Products, such as to aid in collagen production.

13. Even if the Products' sodium ascorbyl phosphate does not function as a preservative in the Products, it nonetheless qualifies as a preservative given that it has the capacity or tendency to do so. Cosmetics, like any product containing water and organic/inorganic compounds, require preservation against microbial contamination to guarantee consumer's safety and to increase their shelf-life. To prevent these effects, two distinct groups of substances can be used, namely, antimicrobial preservatives, which act on microorganisms, and antioxidant preservatives capable of suppressing oxidation phenomena and the formation of free radicals.[4] *See also* 21 C.F.R. §101.22(a)(5) (defining preservatives in food as "any chemical that, when added to food, tends to prevent or retard deterioration"); *see also* Merriam-Webster's Dictionary (defining "preservative"

---

[3] Klock J et al. *Sodium ascorbyl phosphate shows in vitro and in vivo efficacy in the prevention and treatment of acne vulgaris*. INT J COSMET SCI. 2005 Jun;27(3):171-6. doi: 10.1111/j.1467-2494.2005.00263.x. PMID: 18492184. https://pubmed.ncbi.nlm.nih.gov/18492184/#:~:text=Sodium%20ascorbyl%20phosphate%20(SAP)%20represents,after%208%20h%20on%20P.

[4] Halla N, et al., *Cosmetics Preservation: A Review on Present Strategies*. MOLECULES. 2018 Jun 28;23(7):1571. doi: 10.3390/molecules23071571. PMID: 29958439; PMCID: PMC6099538.

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6099538/

6

as "something that preserves or has the power of preserving.");[5] Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or capable of preserving").[6]

14. **Defendant exploits consumer demand for preservative-free products.** Defendant's misrepresentation seeks to capitalize on consumers' preference for products with no preservatives. Indeed, the preservative free cosmetics market has experienced increased growth, driven by consumer demand for natural and chemical-free beauty products.

15. According to another study, when consumers were asked to choose a product that was the closest to their understanding of what "natural" means on product labels, on balance, they chose products with "No Preservatives" labels.[7]

16. Accordingly, Defendant's misrepresentations are material to reasonable consumers. Reasonable consumers would attach importance to a representation that a product has "Preservative-Free" because research demonstrates that a majority of consumers place importance on preservative-free claims.

17. The global sale of "clean" beauty products is forecasted to reach $22 billion by 2024.[8] Thus, consumers are willing pay a premium for healthy, preservative-free skin care and cosmetic products, as they hoped for in purchasing the Products.

18. Defendant's misleading and deceptive practices proximately caused harm to

---

[5] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld.

[6] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative.

[7] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896 (2020).

[8] Statista, *Forecasted market size of the natural and organic beauty industry in 2016 and 2024*, https://www.statista.com/statistics/750779/natural-organic-beauty-market-worldwide/

Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

19. Plaintiff seeks to represent a class defined as all persons in the United States who, during the applicable statute of limitations period, purchased Defendant's Products (the "Class").

20. Plaintiff seeks to represent a subclass defined as all Class members who reside in New York who purchased the Products (the "New York Subclass") (collectively with the Class, the "Classes").

21. Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

22. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: the true nature and presence of preservatives in the Products; whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive; whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof; and whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

23. The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased

Defendant's Products, and suffered a loss as a result of those purchases.

24. Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

25. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## **CAUSES OF ACTION**

### **COUNT I**
**Violation of the New York General Business Law ("GBL") § 349**
**(On behalf of the New York Subclass)**

26. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

27. Plaintiff brings this cause of action on behalf of herself and members of the New

York Subclass against Defendant.

28. Plaintiff and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

29. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

30. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

31. Defendant made false and misleading statements by marketing the Products as containing "no preservatives" when in fact they contain sodium ascorbyl phosphate, a known preservative.

32. In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

33. Defendant's deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality of its Products, as discussed throughout.

34. Plaintiff and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

35. Defendant's actions set forth above occurred in the conduct of trade or commerce.

36. The foregoing deceptive acts and practices were directed at consumers.

37. Defendant's misleading conduct concerns widely-purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because it fundamentally misrepresents the

production and quality of the Products.

38. Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that (a) they would not have purchased the Products had they known the truth, and (b) they overpaid for the Products on account of the "no preservatives" misrepresentation, as described herein.

39. On behalf of themselves and other members of the New York Subclass, Plaintiff seeks to recover their actual damages or fifty dollars, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II
### Violation of the New York General Business Law § 350
### (On behalf of the New York Subclass)

40. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

41. Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

42. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

43. Defendant's labeling and advertisement of the Products was false and misleading in a material way. Specifically, Defendant advertised the Products as containing "no preservatives" when in fact they contain sodium ascorbyl phosphate, a known preservative.

44. Plaintiff and reasonable consumers understand Defendant's misrepresentations to mean that the Products do not contain preservatives.

45. This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

46. This misrepresentation has resulted in consumer injury or harm to the public interest.

47. As a result of this misrepresentation, Plaintiff and New York Subclass members have suffered economic injury because (a) they would not have purchased the Product had they known the truth, and (b) they overpaid for the Products on account of the "no preservatives" misrepresentation, as described herein.

48. By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and New York Subclass members seek to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

**COUNT III**
**Breach of Express Warranty**
**(On behalf of the Class and the New York Subclass)**

49. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

50. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

51. Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products contain "no preservatives."

52. Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Classes.

53. In fact, the Products do not conform to Defendant's representations and warranties because the Products contain sodium ascorbyl phosphate, a known preservative. By falsely

representing the Products in this way, Defendant breached its express warranty.

54. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Classes have been injured and harmed in an amount to be proven at trial because they would not have purchased the Products, or would have paid substantially less for them, had they known they contained a preservative.

55. Prior to filing this Complaint, Plaintiff sent Defendant, via certified mail, a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313 and 2-607. Plaintiff's counsel sent Defendant a letter advising that Defendant breached an express warranty and demanding that Defendant make full restitution by refunding the monies received therefrom. Defendant did not respond to Plaintiff's letter.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class and New York Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass;

(b) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c) For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(g) For an order awarding reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: April 15, 2024　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　By: 　*/s/ Russell M. Busch*
　　　　　　　　　　　　　　　　　　　　Russell M. Busch

　　　　　　　　　　　　　　　　　Russell M. Busch
　　　　　　　　　　　　　　　　　J. Hunter Bryson*
　　　　　　　　　　　　　　　　　**MILBERG COLEMAN BRYSON**
　　　　　　　　　　　　　　　　　**PHILLIPS GROSSMAN, PLLC**
　　　　　　　　　　　　　　　　　405 E 50th Street
　　　　　　　　　　　　　　　　　New York, NY 10022
　　　　　　　　　　　　　　　　　Telephone: (630) 796-0903
　　　　　　　　　　　　　　　　　Email: rbusch@milberg.com
　　　　　　　　　　　　　　　　　　　　　hbryson@milberg.com

　　　　　　　　　　　　　　　　　Alec Leslie
　　　　　　　　　　　　　　　　　Julian C. Diamond
　　　　　　　　　　　　　　　　　Israel Rosenberg
　　　　　　　　　　　　　　　　　**BURSOR & FISHER, P.A.**
　　　　　　　　　　　　　　　　　1330 Avenue of the Americas, 32nd Floor
　　　　　　　　　　　　　　　　　New York, New York 10019
　　　　　　　　　　　　　　　　　Telephone: (646) 837-7150
　　　　　　　　　　　　　　　　　Facsimile: (212) 989-9163
　　　　　　　　　　　　　　　　　E-Mail: aleslie@bursor.com
　　　　　　　　　　　　　　　　　　　　　jdiamond@bursor.com
　　　　　　　　　　　　　　　　　　　　　irosenberg@bursor.com

　　　　　　　　　　　　　　　　　Nick Suciu III*
　　　　　　　　　　　　　　　　　**MILBERG COLEMAN BRYSON**
　　　　　　　　　　　　　　　　　**PHILLIPS GROSSMAN, PLLC**
　　　　　　　　　　　　　　　　　6905 Telegraph Rd., Suite 115
　　　　　　　　　　　　　　　　　Bloomfield Hills, MI 48301
　　　　　　　　　　　　　　　　　Telephone: (313) 303-3472
　　　　　　　　　　　　　　　　　Email: nsuciu@milberg.com

Erin J. Ruben*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: eruben@milberg.com


\* *Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 15, 2024 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

*/s/ Russell M. Busch*
Russell M. Busch
