UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEON WATTS, *individually and on behalf of all others similarly situated*,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>BEIERSDORF INC.,<br><br>　　　　　　　　　Defendant. | **MEMORANDUM & ORDER**<br>24-CV-00527 (HG) |

**HECTOR GONZALEZ**, United States District Judge:

　　Plaintiff Deon Watts brings consumer protection claims against Defendant Beiersdorf Inc. based on the allegedly false and misleading claim that certain Aquaphor-branded products contain "no preservatives." Because Plaintiff has pled enough to clear the low threshold needed to sustain her claims at this juncture, Defendant's motion to dismiss is denied.

## BACKGROUND

　　The Court draws the following facts from the Amended Complaint. ECF No. 22 ("AC"). The Court "recite[s] the substance of the allegations as if they represent[] true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).¹ Defendant sells Aquaphor-branded lip repair products labeled with "no preservatives" ("Aquaphor"). AC ¶ 1. Plaintiff purchased such a product in November 2023 in Brooklyn. *Id.* ¶ 7. Although Plaintiff understood the Aquaphor to contain "no preservatives," it contained sodium ascorbyl phosphate ("SAP"). *Id.* SAP is a chemical preservative commonly

---

¹ Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

added in cosmetics and skincare products because of its antioxidant and antimicrobial properties. *Id.* ¶¶ 9–11. "Had Plaintiff known the 'no preservatives' representation was false and misleading, she would not have purchased the [Aquaphor], or, at the very least, would have only been willing to purchase [it] at a lesser price." *Id.* ¶ 7.

On January 24, 2024, Plaintiff initiated this case. *See* ECF No. 1. It was reassigned to me on February 21, 2024. On March 6, 2024, Defendant filed a pre-motion conference letter in anticipation of a motion to dismiss. *See* ECF No. 18. Plaintiff filed a response on March 13, 2024, in which she indicated her intention to abandon certain claims in the initial complaint. *See* ECF No. 20. The Court directed Plaintiff to file an amended complaint, *see* Mar. 13, 2024, Text Order, which Plaintiff did on April 15, 2024, *see* ECF No. 22. On May 17, 2024, Defendant filed its motion to dismiss. *See* ECF No. 30 (Motion); ECF No. 31 (Memorandum); ECF No. 32 (Affidavit). Plaintiff filed her opposition on June 12, 2024. *See* ECF No. 33. On June 26, 2024, Defendant filed its reply. *See* ECF No. 34.

## **LEGAL STANDARD**

"In order to survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausibly alleged 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In making this assessment, the court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *VR Glob. Partners, L.P. v. Petróleos de Venez., S.A.*, No. 24-1176-cv, 2024 WL 4891271, at *2 (2d Cir. Nov. 26, 2024).

**DISCUSSION**

Plaintiff seeks to represent "a class defined as all persons in the United States who, during the applicable statute of limitations period, purchased" Aquaphor lip repair products. AC ¶ 19. She also seeks to represent a subclass consisting of class members who reside in New York. *Id.* ¶ 20. On behalf of the putative New York subclass, she asserts claims pursuant to New York General Business Law ("GBL") Sections 349 and 350. *See id.* ¶¶ 26–48. She also asserts a breach of express warranty claim on behalf of both putative classes. *See id.* ¶¶ 49–55. Defendant moves to dismiss all three claims.

   I.   **GBL Sections 349 and 350**

Section 349 prohibits deceptive acts and practices against consumers and Section 350 proscribes false advertising. *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95–96 (2d Cir. 2023). These sections "are directed at wrongs against the consuming public and are designed to protect people from consumer frauds." *Yodice v. Touro Coll. & Univ. Sys.*, No. 21-2986-cv, 2024 WL 3466546, at *2 (2d Cir. July 19, 2024). "These two statutes require a claimant to show that the defendant engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *MacNaughton*, 67 F.4th at 96. These claims are analyzed together. *Id.* Here, Defendant argues that both GBL claims fail because Plaintiff does not plausibly allege injury or deception. *See* ECF No. 31 at 8.[2] This Court addresses each element in turn.

   A.   *Injury*

Defendant first attacks Plaintiff's claimed injury. *See id.* "An actual injury claim under sections 349 and 350 typically requires a plaintiff to allege that, on account of a materially

---

[2] The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

3

misleading practice, she purchased a product and did not receive the full value of her purchase." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020). As an initial matter, the Court agrees with Defendant that, to the extent Plaintiff alleges she would not have bought the Aquaphor but for the alleged misrepresentation, that claim must fail. *See* ECF No. 31 at 8–9. Because the alleged injury must consist of "either pecuniary or 'actual' harm," *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999), merely "[c]laiming that the plaintiff would not have bought the product absent the defendant's deception is not enough," *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 363 (E.D.N.Y. 2022). Indeed, Plaintiff does not seriously contest this branch of Defendant's argument in opposition. *See* ECF No. 33 at 9–10.

Moving on, the core of the parties' dispute about injury concerns whether Plaintiff has adequately pled "something more than the defendant's deception." *Kyszenia*, 583 F. Supp. 3d at 363. On this point, Plaintiff invokes a familiar theory of injury: that the alleged deception caused her to pay a price premium for the Aquaphor. *See* ECF No. 33 at 9–12. The parties unleash a torrent of case law on this point, so it is first important to focus on the specific allegations in this case. Plaintiff alleges that "[h]ad [she] known the 'no preservatives' representation was false and misleading, she . . . at the very least, would have only been willing to purchase the [Aquaphor] at a lesser price." AC ¶ 7. She further claims that "Defendant's misrepresentation seeks to capitalize on consumers' preference for products with no preservatives. Indeed, the preservative[-]free cosmetics market has experienced increased growth, driven by consumer demand for natural and chemical-free beauty products." *Id.* ¶ 14–16. She also alleges that there is a large worldwide market for such products. *Id.* ¶ 17.

The Courts finds that these allegations are sufficient to plead the injury element. Plaintiff advances a standard price premium claim. *See Duran*, 450 F. Supp. 3d at 350 ("A plaintiff alleges that a company marketed a product as having a 'unique quality,' that the marketing

4

allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality."). Drawing all inferences in Plaintiff's favor, she adequately pleads that Defendant was able to charge an inflated sticker price because of Aquaphor's unique preservative-free quality, which is valued by consumers. *See* AC ¶¶ 7, 14. As in *Duran*, in which the plaintiff alleged that the defendant "was able to charge the premium price . . . *because* [the defendant] had represented that the [at-issue hairstyling gel] ha[d] the unique quality of creating no flakes," Plaintiff's claim may proceed here. 450 F. Supp. 3d at 351 (emphasis in original). On this count, I join "[n]umerous courts in this Circuit [which] have found sufficient a plaintiff's general allegation that she would not have paid a price premium but for the defendant's misrepresentations." *See Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 578 (S.D.N.Y. 2021) (collecting cases).

Defendant's opposing arguments are not persuasive. First, it claims that the AC has insufficient factual support for the price premium claim, observing that Plaintiff pleads no "facts regarding what the premium was, what price [s]he paid for the products, or the price of non-premium products." ECF No. 31 at 10 (quoting *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018)). But with that, Defendant "is demanding more than the law requires" as this juncture. *Colpitts*, 527 F. Supp. 3d at 578; *see also Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) ("[Plaintiff] has alleged that the price of the product was inflated as a result of defendant's deception, which meets the injury requirement.").[3]

---

[3] As the *Colpitts* court observed, *Colella* involved sparse facts in which there appeared to be a mismatch between the product alleged to be misleading and the products purchased. *See Colpitts*, 527 F. Supp. 3d at 578. Like in *Colpitts*, in which the GBL claims survived, Plaintiff here "has specified the exact product [s]he purchased, the representation[] on that product's label that allegedly w[as] misleading, and, in general terms, when and where [s]he made the purchase." *Id.* In addition, as a more general matter, "reliance on *Colella* is unavailing because . . . the Second Circuit has more recently indicated that a plaintiff's 'failure to identify

5

Next, and relatedly, Defendant argues that the alleged price premium reflects nothing more than Plaintiff's subjective view about the price at which she would have been willing to buy the Aquaphor less the alleged misrepresentation. *See* ECF No. 31 at 11. In other words, Defendant says Plaintiff "must allege that [s]he overpaid by some objective measure, and not just that [s]he felt, subjectively, that [s]he overpaid." *See id.* (emphasis omitted) (quoting *Belcastro v. Burberry Ltd.*, No. 16-cv-1080, 2017 WL 5991782, at *4 (S.D.N.Y. Dec. 1, 2017)).[4] The Court rejects that argument because it misreads the AC. Defendant's own case, *Belcastro*, which forms part of a long line of authority in this Circuit specifically concerning outlet store pricing, is illustrative. There, the plaintiff complained that he overpaid for shirts at an outlet store because the true retail price was not accurately disclosed. *See Belcastro*, 2017 WL 5991782, at *1, *4. Such a claim failed, as "New York law does not recognize an injury based on the subjective value assigned to a missing bargain because it merges deception and injury." *Id.* at *4. That is not this case. Plaintiff does not merely allege "subjective disappointment" with her purchase; rather, as discussed above, she claims that "the marketing of the [Aquaphor] imported a unique quality to the product for which a premium was charged," an "actual injury" sufficient to state a claim. *See DaCorta v. AM Retail Grp., Inc.*, No. 16-cv-0174, 2018 WL 557909, at *7–8

---

the prices of competing products to establish the premium that she paid is not fatal to her claim' at the motion to dismiss stage." *Seaman v. This Is L., Inc.*, No. 24-cv-3524, 2024 WL 4449405, at *5 (E.D.N.Y. Oct. 2, 2024) (ultimately quoting *Axon*, 813 F. App'x at 704).

[4]   In this section, Defendant also suggests that Plaintiff's injury theory must fail because "the lower price Plaintiff may have been willing to pay may not have been available in the marketplace at all" and that Plaintiff's general claims about the demand for preservative-free products do not "make[] it any more plausible that *this product* sold at a premium." ECF No. 31 at 11. But those arguments, made on no authority, again seek to impermissibly import heightened pleading requirements onto GBL claims. *See generally Colpitts*, 527 F. Supp. 3d at 577 (explaining that claims under Sections 349 and 350 "need only meet the bare-bones notice-pleading requirements of Rule 8(a)").

(S.D.N.Y. Jan. 23, 2018) (explicating the "distinction between Premium Price Cases and Outlet Cases" and collecting cases about nutritional claims). Plaintiff has adequately pled an injury.

        B.    *Deception*

Defendant also argues that Plaintiff has not adequately alleged deception "because [she] fails to plead facts to show that [SAP] is a preservative in cosmetics, let alone in the lip balm." ECF No. 31 at 12. This argument goes to the "materially misleading" element of the GBL claims, which asks if "[a] defendant's actions . . . are likely to mislead a reasonable consumer acting reasonably under the circumstances." *Yodice*, 2024 WL 3466546, at *2. "At the pleading stage, a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer, but it must proceed with care in doing so as the inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *See Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 295–98 (S.D.N.Y. 2022) (denying motion to dismiss GBL claims based on "no preservatives" label).

Defendant's first argument is that "Plaintiff fails to plead any facts showing that [SAP] functions as a preservative in the [Aquaphor] lip repair product." ECF No. 31 at 13 (emphasis omitted). The Court disagrees. The AC alleges that SAP is used as an antioxidant "to slow deterioration caused by exposure to the air and also to control the pH of the finished product." AC ¶¶ 10–11. Plaintiff also alleges that SAP has "antimicrobial properties that inhibit the growth of bacterial strains," "thereby preventing spoilage and preserving freshness and color." *Id.* ¶ 11. Defendant's principal in-Circuit authority is *Zuchowski v. SFC Global Supply Chain, Inc.*, No. 20-cv-10171, 2022 WL 3586716 (S.D.N.Y. Aug. 22, 2022). ECF No. 31 at 13. In that case, the plaintiff alleged that certain ingredients "function[ed] as 'an anti-staling agent in breads to preserve the softness of the crust during the product's shelf life' . . . and 'as an anti-staling agent in baked goods.'" *Zuchowski*, 2022 WL 3586716, at *3. But the GBL claims failed

7

because the plaintiff "d[id] not explain how these ingredients operate[d] as preservatives in [the] [d]efendant's product, frozen pizzas, as opposed to breads and baked goods," where the plaintiff was challenging the defendant's alleged misrepresentation about a "preservative free crust." *Id.* (capitalization altered). On this point, the Court agrees with Plaintiff, ECF No. 33 at 15–16, that she has not put forward such a narrow claim about the use of SAP in some related product only; rather, she makes broader factual assertions regarding the use of SAP as a preservative in cosmetics. *See Squeo v. Campbell Soup Co.*, No. 24-cv-02235, 2024 WL 4557680, at *6 (N.D. Cal. Oct. 22, 2024) (in denying motion to dismiss New York GBL claims, distinguishing *Zuchowski* because the plaintiffs had "alleged more broadly that citric acid functions as a preservative when added to food in general"). And a common sense reading of the AC also makes clear that Plaintiff alleges that because SAP acts as a preservative generally, it also functions as a preservative in Aquaphor, which contains SAP. *See, e.g.*, *id.* ("If citric acid generally functions as a preservative when added to food, then it is reasonable to infer at the pleading stage that it did so as an ingredient in the [at-issue] chips).[5]

Relatedly, Defendant points to *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813 (E.D. Pa. 2017). ECF No. 31 at 13–14. In that case, the court dismissed a Section 349 claim where the plaintiff "ha[d] not adequately pleaded that a reasonable consumer would define an ingredient as a preservative regardless of its functionality—*i.e.*, even if the ingredient does not actually

---

[5]  *See also, e.g.*, *Simeone v. T. Marzetti Co.*, No. 21-cv-9111, 2023 WL 2665444, at *6 (S.D.N.Y. Mar. 28, 2023) ("Plaintiffs have alleged citric acid can act as a preservative when included in food, including frozen food. Plaintiffs have also specifically alleged that all of the Products include citric acid in the flavored spread covering the bread, and that this citric acid serves as a preservative because it 'stabilizes the Products' active ingredients.' Taken together, these allegations are sufficient to establish that citric acid functions as a preservative in the Products."). In its reply, Defendant tries to distinguish cases like *Simeone* in which claims about citric acid were allowed to proceed. *See* ECF No. 34 at 7, 10–11 & n.2. But Defendant fails to explain why that exact factual distinction is analytically relevant, and it does not seem to be.

8

preserve that particular product." *Hu*, 251 F. Supp. 3d at 821.  Although not precisely articulated, Defendant's argument appears to be that Plaintiff's allegation that SAP "qualifies as a preservative given that it has the capacity or tendency to [function as a preservative]," regardless of whether it actually "function[s] as a preservative in [Aquaphor]," AC ¶ 13, fails as a matter of law.  *See* ECF No. 31 at 13.  Per the above, this argument is no longer relevant because the AC adequately alleges that SAP actually functions as a preservative in Aquaphor.  And in any event, the Court disagrees with *Hu*'s rationale.  As persuasively explained in *Kelly*, *Hu* turned on the plaintiff's failure to allege enough "supporting her theory of the definition of a preservative."  *See Kelly*, 640 F. Supp. 3d at 298 (quoting *Hu*, 251 F. Supp. 3d at 821).  However, in *Kelly*, Judge Liman found it sufficient that the plaintiff's "definition of 'preservative' [was] supported by the common definition of that term" from Merriam-Webster's dictionary, which included "something that 'has the power of preserving.'"  *See id.*  Plaintiff relies on that same definition here, *see* AC ¶ 13, and "[w]ith th[at] potential definition in mind, it cannot be said that it would be impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived by Defendant's labeling of the [Aquaphor] [with] 'No Preservatives,'" *Kelly*, 640 F. Supp. 3d at 298.

Defendant also spends much time attacking the factual underpinnings of the AC, specifically focusing on the scientific studies cited therein.  *See* ECF No. 31 at 14–17.  The core contention is that "none [of the cited articles] supports Plaintiff's ultimate point—that [SAP] is a preservative generally or functions as a preservative in the [Aquaphor] lip balm."  *See id.* at 15.  As a threshold matter, in light of the Court's prior analysis, to the extent these studies provide *additional* factual support for Plaintiff's theory of deception, the assertion that they arguably fail to bolster her theory does not ultimately move the needle on the motion to dismiss.  *See Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 242 (S.D.N.Y. 2021) (explaining that scientific

9

studies are not needed for a court to accept as true the pled facts).  Although the Court appreciates Defendant's meticulous treatment of the studies, its takeaway—*e.g.*, "that Plaintiff is playing extremely fast and loose with the science," ECF No. 31 at 15—is better suited for summary judgment or trial.  *See Kelly*, 640 F. Supp. 3d at 295–96.

On this point, Defendant's reliance on *Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24 (S.D.N.Y. 2023), is misplaced.  *See* ECF No. 31 at 17.  To be sure, the *Bermudez* court explained that "where a plaintiff has chosen to use scientific studies in an effort to raise plausible inferences that marketing is deceptive, and the studies cited do not support her claims, the plaintiff has not plausibly pleaded her claims."  667 F. Supp. 3d at 37.  However, the Court agrees with Plaintiff that *Bermudez* is easily distinguishable.  *See* ECF No. 33 at 14.  There, the plaintiffs alleged that Colgate's claims about the safety of toothpastes with charcoal were materially misleading.  *Bermudez*, 667 F. Supp. 3d at 29–30.  On a motion to dismiss, the court specifically agreed with Colgate's contention that the plaintiffs' scientific articles "[did] not show that [the] charcoal toothpastes lack[ed] the advertised benefits" or that they "affirmatively disprove[d]" Colgate's safety claims.  *Id.* at 38.  In this case, the alleged misrepresentation is different in kind.  Plaintiff does not contend that the Aquaphor was "incapable of providing the advertised benefits."  *See id.*  Her claim is more straightforward:  the Aquaphor said it was preservative-free, but it contains a preservative.  As described above, Plaintiff has pled enough to render that claim plausible at this early stage.  Thus, even if the studies do not specifically support that SAP functions as a preservative generally or in Aquaphor, they also do not fatally "undermine the plausibility of allegations in the []AC."  *See Bermudez*, 667 F. Supp. 3d at 38.

## II. Breach of Express Warranty

Defendant also argues that Plaintiff's breach of express warranty claim fails.  *See* ECF No. 31 at 17–18. Under New York law, the elements of such a claim are "(i) a material

10

statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach." *Richardson v. Engewell Personal Care, LLC*, No. 23-128, 2023 WL 7130940, at *2 (2d Cir. Oct. 30, 2022) (numbering altered). Defendant claims that Plaintiff fails to adequately plead (1) injury; (2) "material deception"; and (3) reliance. *See* ECF No. 31 at 17. As to injury, Defendant relies on the same arguments it made with respect to the GBL claims. *See id.* Because those arguments failed there, they must also fail here. *See Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (considering these claims together and denying motion to dismiss express warranty claim). The same is true with respect to Defendant's recycled deception argument, *see* ECF No. 31 at 17, as it relates to the breach element. *See Newman v. Bayer Corp.*, 695 F. Supp. 3d 469, 483–84 (S.D.N.Y. 2023) ("For the same reasons Plaintiff has plausibly alleged that the Products could mislead a reasonable consumer in violation of GBL §§ 349–50, Plaintiff has plausibly alleged that Defendant[] breached an express warranty.").

      The heart of Defendant's argument is that Plaintiff has insufficiently pled the reliance element. *See* ECF No. 31 at 17–18. As a reminder, Plaintiff alleges that "[h]ad [she] known that the 'no preservatives' representation was false and misleading, she would not have purchased the [Aquaphor], or, at the very least, would have only been willing to purchase [it] at a lesser price." AC ¶ 7. Defendant contends that this is insufficient because "Plaintiff's allegation is merely that she understood the [Aquaphor] not to contain any preservatives, without providing any underlying factual details concerning which definition of preservative she relied on." ECF No. 31 at 18. That again resembles an inapplicable heightened pleading standard, and without a citation, it is not even clear where it comes from. *See Newman*, 695 F. Supp. at 484 (rejecting a nearly identical argument). Defendant then turns to *Oden v. Boston Scientific Corp.*, in which

11

Judge Feuerstein dismissed an express warranty claim because the complaint was "devoid of any facts that would permit the inference that Plaintiff actually read the[ at-issue] statements and directly relied upon them." 330 F. Supp. 3d 877, 895 (E.D.N.Y. 2018). Although Plaintiff does not explicitly allege that she read the label, she alleges that "[i]n purchasing the [Aquaphor], [she] relied on Defendant's . . . marketing that the [Aquaphor] contained 'no preservatives,'" and that she "understood that 'no preservatives' meant the [Aquaphor] did not contain any preservatives." AC ¶ 7. Drawing all inferences in her favor, as the Court must at this stage, this case is therefore "[u]nlike . . . *Oden*" because "it is clear from [these] allegations that she indeed read the label[] and relied upon the warranty on the" Aquaphor. *See Newman*, 695 F. Supp. 3d at 484. Of course, Defendant may test and challenge that claim in discovery, but for now, she has done "all that is required even under Defendant[']s standard in *Oden*." *See id.*[6] Plaintiff therefore states a claim for breach of express warranty.

*     *     *

---

[6] Defendant's reliance on *Kyszenia* is curious. *See* ECF No. 31 at 18. In that case, the express warranty claim failed because the complaint "d[id] not specify where or when the defendant made the claimed assurances, nor any facts showing that the plaintiffs relied on them before they bought their cameras." *Kyszenia*, 583 F. Supp. 3d at 364. That defect clearly does not apply to the AC, since Plaintiff specifies when and where she claims to have bought the Aquaphor, what representation stood on the label, and how she understood it. *See* AC ¶ 7.

## **CONCLUSION**

For the foregoing reasons, "[t]his is not one of the rare instances in which the Court may dismiss a consumer-protection claim on this posture." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) (Nathan, J.). Accordingly, Defendant's motion to dismiss is denied. It shall answer the AC within 21 days. The Court will enter a separate order regarding the submission of a case management plan.

SO ORDERED.

        */s/ Hector Gonzalez*
        HECTOR GONZALEZ
        United States District Judge

Dated: Brooklyn, New York
       December 19, 2024